UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PHILIP C. BELLFY, et al., ) | |
|     Plaintiffs, ) | |
| ) | No. 1:15-cv-282 |
| -v- ) | |
| ) | HONORABLE PAUL L. MALONEY |
| KEITH CREAGH, ) | |
|     Defendant. ) | |
| _____ ) | |

**OPINION AND ORDER DISMISSING PLAINTIFFS' CASE
WITHOUT PREJUDICE FOR LACK OF STANDING**

This matter is before the Court on Plaintiffs' motion for a preliminary injunction. (ECF No. 7). In this action, Plaintiffs seek to prevent "Defendant, or other State of Michigan officers, employees, agencies, subdivisions, successors, or assigns" from approving the sale of land in the Upper Peninsula over which Plaintiffs assert usufructuary, occupancy, and/or treaty rights. Plaintiffs assert that the sale of the land would impair their rights under the 1836 Treaty of Washington as recognized in a 2007 Consent Decree. (ECF No. 18-2.); *see United States v. Michigan*, No. 2:73-cv-26 (W.D. Mich. Nov. 2, 2007).

Plaintiffs filed an ex parte motion for temporary restraining order on March 17, 2015 (ECF No. 2), which was denied on procedural grounds for failing to fulfill the requirements of Fed. R. Civ. P. 65(b)(1). Plaintiffs filed a nearly identical motion titled "Motion for Temporary Restraining Order Verified Complaint for Declaratory and Injunctive Relief" on April 13, 2015, which merely added a four-paragraph affidavit from Philip Bellfy that did not satisfy the ex parte motion requirements. (ECF No. 7.) However, because the Defendant filed a response, the Court addressed the merits of the motion, denying it in an opinion issued April 16, 2015. (ECF No. 12.)

1

A hearing was held regarding Plaintiffs' motion for a preliminary injunction on April 29, 2015; at the hearing, the Court gave Plaintiffs fourteen days to submit briefs explaining why they have standing to seek relief from the Court. (ECF No. 32.) Both parties duly filed supplemental briefs,[1] and the Court has reviewed the record in its entirety and considered all legal arguments.

For the reasons discussed herein, the motion for a preliminary injunction is **DENIED** and the case in its entirety, including all pending motions, is **DISMISSED WITHOUT PREJUDICE**.

I.    **BACKGROUND**

Pursuant to the 1836 Treaty of Washington and as recognized in a 2007 Consent Decree, members of the Ottawa and Chippewa tribes have certain usufructuary rights in land within the area covered by the treaty. The Consent Decree explains that the tribes can exercise these rights in public land, private land that is required by law to be open to the public, and other private land only with the landowner's written permission. (ECF No. 8-2 at PageID # 81–85.) The treaty grants the tribes "the right of hunting on the lands ceded, with the other usual privileges of occupancy, until the land is required for settlement." (ECF No. 8-1 at PageID # 65.)

The Michigan Department of Natural Resources owns a portion of public land within the treaty geographic area and intends to sell it to Graymont LLC, a subsidiary of a limestone mining and processing company. The parties do not dispute that the land at issue lies entirely within the area ceded by the 1836 Treaty. Graymont submitted a Land Transaction Application in support of the sale by the DNR, which triggered an extensive review process and a number of amendments to the application. On March 19, 2015, the Defendant, Director of the DNR Keith Creagh, announced his approval of the Land Transaction Application. Under the approved deal, Graymont will buy the

---

[1] For reasons unclear to the Court, only one Plaintiff, Martin Reinhardt, filed and signed the brief.

surface and mineral rights to 2,614 acres. The public will continue to have access to the surface of the land unless it is being actively used for mining or a processing plant. Graymont will exchange other land in the Upper Peninsula, which will be open to the public, for 830 of those acres. Additionally, Graymont will acquire subsurface mineral rights to 7,026 acres for an underground mine, while the DNR will retain the surface rights for this area minus 400 acres used for mining access and operations. Almost $2 million of the purchase price will be designated to purchase more public land, and the DNR has a buyback option when Graymont ceases limestone mining. Defendant writes that "in the near future, DNR and Graymont will execute the LTA, and the various land transfers will occur later in a series of closings." (ECF No. 8 at PageID #43.)

Plaintiffs are concerned that the sale of this land or rights to it will affect their rights to use the land, specifically because it would be privately owned and thus the owner could close the area to the Plaintiffs. Plaintiffs bring this motion on behalf of themselves and all Tribal members who have rights to use the land. Plaintiffs do not describe in detail if or how they use the land involved in the transaction. While evidence demonstrates that the Bay Mills Indian Community Executive Council passed resolutions opposing the "sale or exchange of public lands with Graymont," no Tribal entity has sought to join in this action. (ECF No. 33-2 at PageID #569.)

## II. LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(1), a party may assert a defense for lack of subject-matter jurisdiction. While the State of Michigan initially urged the Court to rule on a 12(b)(6) motion, it raised several standing arguments in subsequent motions. Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.*

As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).[2] "If Plaintiffs cannot establish standing, their claims must be dismissed for lack of subject-matter jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607. Further "[j]urisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Steel Co. V. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).[3]

Federal courts follow the established principle that "[a] plaintiff must meet Article III and prudential standing requirements to proceed with his case." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012);. To establish standing under Article III of the U.S. Constitution, a plaintiff must show:

> (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Cleveland Branch NAACP v. City of Parma*, 263 F.3d 513, 523–24 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 180–81 (2000)); *McGlone*, 681 F.3d at 729.

To establish prudential standing, a plaintiff must meet a few requirements:

> (1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a "generalized grievance" shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question.

*McGlone*, 681 F.3d at 729 (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999));

---

[2] As an initial matter, this Court has grave doubts whether a proper complaint under the Federal Rules of Civil Procedure was filed in the first instance. The initial filing, even liberally construed, is arguably not a complaint. Defendant has not raised this arguable deficiency in a specific motion. (ECF No. 1.) Nonetheless, the Court declares that it lacks subject-matter jurisdiction in this case.

[3] Even when a party does not seek dismissal in a Rule 12(b)(1) motion or in a responsive pleading, standing can be raised *sua sponte*. *Loren*, 505 F.3d at 607.

*see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982) ("Beyond the constitutional requirements, the federal judiciary has adhered to a set of prudential principles that bear on the question of standing."). Thus, federal courts are not "merely publicly funded forums for the ventilation of public grievances." *Valley Forge*, 454 U.S. at 473; *see U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973) (noting that filing a complaint in federal court is "not a vehicle for the vindication of the value interests of concerned bystanders").

*A. Constitutional Standing*

Plaintiffs offer little argument in favor of standing, relying instead on various general assertions of "Tribal members' rights" and First Principles.[4] As an example, Plaintiffs declare that "[t]he sale of Ceded Territory to Graymont, LLC, to engage in strip-mining would . . . 'interfere with the usual privileges of occupancy rights' of the Plaintiffs, *and the rights of all members of the Plaintiff Class*." (ECF No. 41 at PageID #674 (emphasis added).) A filing by one of the plaintiffs claims personal "treaty rights within the ceded territory." (ECF No. 29 at PageID #544.)

While there are vague suggestions that plaintiffs might use some of the land in question, they more or less "wish to exercise usufructuary . . . rights . . . within" the *entire* ceded area. (ECF No.

---

[4] In a supplemental brief following the hearing, (one of the) plaintiffs contends:

> But, if the Court rules we have no "standing" to sue in Court to uphold our rights, and the State obviously is ignoring its obligations under the Consent Decree to never violate our rights, it may make sense for the Court, which retains ultimate jurisdiction in this issue, to simply declare it null and void, throw it out, and go back to the "bad old days" before the *People v. LeBlanc* fishing rights case was decided by this honorable Court.

(ECF No. 33 at PageID #551.) Another filing asserts "Plaintiffs are entitled to relief based on Article VI, Clause 2, of the US Constitution, and their inherent, aboriginal, Tribal rights of occupancy." (ECF No. 41 at PageID # 673.) While the Court recognizes Plaintiffs' genuinely held passions and positions, "ultimate jurisdiction in this issue" necessarily requires standing in the first place.

1 at PageID #10.) However, the ceded territory contains millions of acres, and general opposition to the mining transaction is "conjectural" and "hypothetical." *Lujan*, 504 U.S. at 560 (1992).[5] Even more clear, however, is Plaintiffs' lack of prudential standing. Even if the plaintiffs could demonstrate constitutionally required "injury in fact that is . . . concrete and particularized," the basis on which they seek to challenge the sale falls squarely within the 2007 Consent Decree—of which they are not a party to.

    *B. Prudential Standing*

The 2007 Consent Decree before this Court declares that "'Parties' means, collectively, the United States, the State [of Michigan] and the Tribes, and 'Party' means any one of them." (ECF No. 18-2 at PageID #215.) The Consent Decree also notes that "[t]he Court shall retain jurisdiction over the Parties and subject matter of this action to enforce this Decree and to resolve disputes arising under this Decree, subject to Section XXVII (Dispute Resolution), and to consider modifications of this Decree under Section XXVIII (Modifications)." (ECF No. 18-2 at PageID #213.) And while it is true that individual members of the tribes that are parties to the Consent Decree enjoy usufructuary rights—those rights are "communal property of the tribes which signed the treaty and their modern political successors," and do "not belong to individual tribal members." *United States v. State of Mich.*, 471 F. Supp. 192, 261 (W.D. Mich. 1979).

In their initial filing with this Court, Plaintiffs note that treaty rights were "'conclusively resolved' in the 2007 Inland Consent Decree, signed by both the State of Michigan and federally-recognized tribes with claims under the 1836 Treaty of Washington." (ECF No. 1 at PageID #5.) And

---

[5] In fact, as Defendants point out, the supplemental brief filed after the hearing states that "Plaintiffs seek a preliminary injunction against the sale of any State of Michigan Ceded Territory ('public land') *if* that sale would abrogate Plaintiffs' 'usual privileges of occupancy.'" (ECF No. 33 at PageID #551 (emphasis added).)

a subsequent filing asserts that "[t]he extent of the rights have already been fairly, equitably, freely, fully, and conclusively resolved by this Court through the Consent Decree." (ECF No. 41 at PageID #675.)[6]

Revealingly, Plaintiffs declared: "We are in Court seeking a preliminary injunction against the sale, *in order to avoid having 'the parties' to the Consent Decree return to this Court to seek a reversal of the sale, once concluded*"; further, they seek an injunction apparently to attempt to have the Tribe avoid the Consent Decree's "dispute resolution mechanism," which may "lead[] to a lengthy and adversarial process." (ECF No. 41 at PageID #674.)

It appears that Plaintiffs are asserting their interests on a third-party basis—the Tribes that are parties to the Consent Decree have not sought to join in this action. *Valley Forge*, 454 U.S. at 474–75 (reaffirming that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties") (internal citation omitted).

No matter how standing is sliced, Plaintiffs can neither demonstrate a constitutionally required "injury in fact that is . . . concrete and particularized" nor can Plaintiffs establish prudential standing to challenge the 2007 Consent Decree. The Court will not allow Plaintiffs to proceed, particularly when Plaintiffs announce they wish to (allegedly) help the Tribe avoid "a lengthy and

---

[6]In contradictory fashion, the same filing attacks the notion that Plaintiffs are seeking an injunction based on the 2007 Consent Decree:

> Defendant further argues that the "Plaintiffs seek an injunction to put a halt to the Graymont transaction based on the 2007 Consent Decree." That assertion is simply not true. . . . The mere assertion by the Defendant that we're seeking relief based on the 2007 Consent Decree does not make it so.

(ECF No. 41 at PageID #673.) In the very next page, however, Plaintiff asserts that "[t]he sale of this specific parcel of Ceded Territory for a strip-mining operation is . . . barred by the language of the Consent Decree." (ECF No. 41 at PageID #674.)

adversarial" "dispute mechanism" that the binding Consent Decree established. (*See* ECF No. 18-2 at PageID #213 ("This Decree shall apply to and be binding upon their Parties, their officers, employees, agencies, subdivisions, successors, and assigns and shall remain binding notwithstanding any future rulings or determinations in any jurisdiction that may be inconsistent with the provisions of this Decree.").) Thus, because Plaintiffs have failed to establish constitutional and prudential standing, the motion for preliminary injunction must be **DENIED**.

### IV.   CONCLUSION

For the reasons stated above, Plaintiffs' motion for a preliminary injunction (ECF No. 7) is **DENIED**, the case is **DISMISSED WITHOUT PREJUDICE** for lack of standing, and all other pending motions are **DISMISSED WITHOUT PREJUDICE** as moot.

### ORDER

Plaintiffs' motion for a preliminary injunction (ECF No. 7) is **DENIED.**

The case in its entirety is **DISMISSED WITHOUT PREJUDICE** for lack of standing, and all other pending motions are **DISMISSED WITHOUT PREJUDICE** as moot.

**IT IS SO ORDERED.**

Date:   August 28, 2015                                              /s/ Paul L. Maloney
                                                                     Paul L. Maloney
                                                                     Chief United States District Judge